IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| ARNOLD L. WILLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:06-CV-156 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 19] will be granted, and plaintiff's motion for summary judgment [doc. 8] will be denied.[1] The final decision of the Commissioner will be affirmed.

---

[1] Plaintiff filed a "Brief in Support of Plaintiff's Motion for Summary Judgment" [doc. 8] but never filed a motion. The Clerk of Court contacted plaintiff's counsel to point out this omission. In response, plaintiff merely refiled his brief with the amended caption "Brief in Support of Complaint" [doc. 14] but still did not file a motion seeking any relief from the court. Nonetheless, because the Commissioner has not raised this issue, the court will construe plaintiff's brief as a motion for summary judgment.

I.

*Procedural History*

Plaintiff applied for benefits in March 2001 and January 2002, alleging a disability onset date of June 19, 2000. [Tr. 133, 137]. He is purportedly disabled by "spondytheosious [sic], high blood pressure, feet and leg pain, [and a] nervous condition." [Tr. 173].

Plaintiff's date late insured was December 2005. [Tr. 142]. He must demonstrate that he became disabled on or before that time. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

The application was denied initially and on reconsideration. Plaintiff then received a series of hearings before Administrative Law Judge John Murdock in 2004. On December 16, 2004, ALJ Murdock issued a decision denying benefits. [Tr. 32-44].

Plaintiff then sought review from the Commissioner's Appeals Council. On May 27, 2005, the Appeals Council remanded plaintiff's case for further evaluation of his psychological limitations. [Tr. 28, 447-49]. On December 8, 2005, ALJ R. Neely Owen ("the ALJ") conducted plaintiff's fourth administrative hearing.

The ALJ issued a decision in February 2006 again denying benefits. He found that plaintiff suffers from "discogenic/degenerative spinal disorder and depression" which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 22]. Citing vocational expert and medical expert testimony, the

ALJ concluded that plaintiff retains the residual functional capacity to perform a limited range of jobs at the light work level. [Tr. 24-27]. Plaintiff was accordingly found ineligible for benefits.

Plaintiff then again sought review from the Appeals Council. Review was denied on June 1, 2006. [Tr. 11]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff was born in 1970 and has a twelfth grade education. [Tr. 133, 137, 179]. He has previously performed coal mining work. [Tr. 164]. Plaintiff last worked in June 2000.

Plaintiff contends that "[t]he pain from [his disabling] conditions is brought on by working." [Tr. 173]. Specifically, plaintiff claims to be limited by pain, irritability, decreased stamina, and limited concentration. [Tr. 204-05, 211-12, 219]. He nonetheless admittedly remains able to attend independently to his personal needs and grooming [Tr. 201, 215], do laundry [Tr. 202, 552], use a computer for an hour at a time [Tr. 488, 490], care for his children [Tr. 202, 216], take out the garbage [Tr. 202, 216], hunt and/or fish independently as often as twice per week [Tr. 203, 210, 217], and "mess around with plants."

3

[Tr. 391].[2]

### III.

*Relevant Medical Evidence*

A. <u>Physical</u>

Plaintiff visited Dr. Shah Sidiqqi in July 2000, reporting an on-the-job injury the previous month in which "he twisted his neck and back and has had neck pain and paraspinal pain and also low back pain and left leg pain." [Tr. 289]. Examination revealed some tenderness and spasm in the lumbosacral region. [Tr. 289].

A June 2000 lumbar MRI showed mild spondylolisthesis at L5-S1. [Tr. 347].[3] Similarly, an August 2000 lumbosacral MRI showed mild spondylosis, bulging, and nerve root compromise from L4 to S1. [Tr. 294].[4] Dr. Siddiqi labeled these findings "mild" or "slight." [Tr. 287]. A contemporary MRI of the cervical spine was normal. [Tr. 293].

Dr. Siddiqi treated plaintiff in 2000 and 2001 with prescription medication and a series of lumbar facet blocks. Plaintiff continued to report pain although some temporary relief was noted with treatment.

---

[2] At his 2005 hearing, however, plaintiff testified that he no longer does any hunting or "[w]ork around the house." [Tr. 558].

[3] Spondylolisthesis is the forward displacement of one vertebra over another. *Dorland's Illustrated Medical Dictionary* 1684 (29th ed. 2000).

[4] Spondylosis is "a general term for degenerative spinal changes due to osteoarthritis." *Dorland's Illustrated Medical Dictionary* 1684 (29th ed. 2000).

Plaintiff underwent a four week work conditioning program in April 2001 through Bluefield Regional Medical Center Work Capacity Services. In the Exit Functional Capacities Evaluation, Bluefield's evaluators predicted that plaintiff was capable of working at the limited medium-heavy classification, and he was "released to pursue vocational options at" that level. [Tr. 250-51]. Bluefield reached this conclusion even though plaintiff was at times "observed grimacing, wincing, and moving at a decreased velocity." [Tr. 248].

In a May 2001 Physical Residual Functional Capacity Assessment ("RFC"), nonexamining physician Uma Reedy predicted that plaintiff could occasionally lift up to fifty pounds, frequently lift up to twenty-five pounds, and stand/walk and sit approximately six hours each per workday. [Tr. 259]. Dr. Reedy further predicted that plaintiff should climb on no more than an occasional basis and that he should avoid concentrated exposure to hazards such as machinery and heights. [Tr. 260, 262]. A March 2002 RFC by Drs. A. Rafael Gomez and Rogelio Lim reached the same conclusions. [Tr. 356].

A July 2001 lumbar MRI was consistent with the August 2000 study. [Tr. 292]. Dr. Siddiqi again considered the findings to be "mild." [Tr. 268]. "[C]onservative treatment measures" were recommended. [Tr. 268]. In September 2001, Dr. Siddiqi opined that "he has reached maximum medical improvement and I suggest he undergo vocational rehab with a view to appropriate work." [Tr. 267].

Orthopaedic surgeon A.E. Landis examined plaintiff in November 2001. Plaintiff was noted to be "significantly overweight. He moves well without any restriction.

5

He does not limp. He is able to undress and dress without any assistance. He is able to get on and off the exam room table without any difficulty." [Tr. 296]. Dr. Landis observed some tenderness at L4 to S1. [Tr. 297]. X-rays showed mild spondylolisthesis at L5-S1. [Tr. 297]. Dr. Landis opined that plaintiff's "condition is not expected to be progressive. He does remain disabled for return to work in heavy manual labor situation, though I feel he is capable of Vocational Rehabilitation and should be able to function at least in the Medium Category[.]" [Tr. 298].

Isernhagen Work Systems performed a functional capacity evaluation in December 2001. Plaintiff was present for the testing and evaluation, which predicted that he could work forty hours per week at the medium exertion level. [Tr. 304].

Dr. German Iosif examined plaintiff in December 2002. Plaintiff continued to report "intermittent but quite frequent stabbing-like pain located in the lower sacral midline area with occasional radiation to the groins." [Tr. 386]. Dr. Iosif opined that plaintiff could perform "sedentary and mild physically demanding work" with a sit/stand option. [Tr. 387]. Lifting would be restricted to five pounds frequently and ten pounds occasionally. [Tr. 387].

Dr. Rodolfo Gobunsuy performed a consultative exam in March 2004. Dr. Gobunsuy noted lumbosacral tenderness and difficulty with squatting and heel-to-toe movement. [Tr. 419]. Plaintiff reported "off and on" neck pain, but no pain or tenderness was observed. [Tr. 419]. Plaintiff reported resolving ankle pain and swelling attributed to

a recent case of gout. [Tr. 417-18]. Dr. Gobunsuy concluded that plaintiff could stand/walk and sit four hours each per workday, with a sit/stand option needed. [Tr. 423-24]. Lifting would be restricted to 25-30 pounds frequently and fifty pounds occasionally. [Tr. 423]. "Occasional" postural limitations were predicted for several activities such as climbing, crawling, and pushing. [Tr. 424-25].

Plaintiff visited neurosurgeon Abed Koja in July 2003. Dr. Koja reviewed plaintiff's MRI and noted "[m]ild degenerative disease at the L5-S1 level." [Tr. 439].

An August 2004 MRI again showed mild spondylolisthesis at L5 along with a "prominent" bulge at L4-5 and a "small" disc protrusion. [Tr. 440]. The following month, to remedy complaints of pain, swelling, and catching of the left knee, Dr. Yogesh Chand performed arthroscopic surgery with no complications noted. [Tr. 465-67]. A September 2005 lumbar MRI produced findings similar to the August 2004 study. [Tr. 468].

B. Mental

Reporting depression, anger, and limited concentration, plaintiff appeared at Southern Highlands Community Mental Health Center in May 2002 for an intake interview. At an initial evaluation by psychiatrist Muhammad Ghani in October 2002, plaintiff reported improvement in his symptoms with use of antidepressant medication. [Tr. 411-12]. Handwritten notes document a series of counseling sessions in 2003 and 2004. The notes are virtually illegible but reflect continued improvement with the use of medication. [Tr. 399-401, 405, 410, 434].

7

Clinical psychologist Barry Friedman performed a psychological evaluation in July 2002. Plaintiff was described as "squirmy" and "genuinely in pain." [Tr. 349]. Testing was indicative of somatization, impaired concentration, and emotional difficulties associated with pain. [Tr. 349-50].[5] Ability to persist on task in the workplace was viewed as "impaired." [Tr. 350-51]. Dr. Friedman noted, however, that his evaluation was conducted "in an essentially untreated condition, and it is not possible at this time to provide opinions about what his residual functional capacities in the social/emotional area will be once he has been treated for a reasonable period of time [with antidepressant medication]." [Tr. 349-50].

Nonexamining psychologist Rosemary Smith completed a Mental RFC in October 2002. She predicted no more than a moderate limitation in any category, opining that plaintiff "would be able to learn and perform a variety of work-like activities." [Tr. 380-82].

Clinical psychologist Arthur Ballas evaluated plaintiff in May 2003. Testing indicated moderately severe to severe depression and anxiety, but no concentration or attention difficulties. [Tr. 393]. Dr. Ballas assessed "seriously limited but not precluded" abilities of dealing with the public and work stresses, behaving in an emotionally stable manner, relating predictably in social situations, and understanding, remembering, and

---

[5] Somatoform disorder is an impairment listed by the Commissioner. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 ("Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms."). A somatoform disorder is "characterized by symptoms *suggesting* a general medical condition but neither fully *explained by* a general medical condition, the direct effects of a psychoactive substance, or another mental disorder nor under voluntary control[.]" *Dorland's Illustrated Medical Dictionary* 532 (29th ed. 2000) (emphasis added).

carrying out detailed instructions. [Tr. 396].⁶

## C. Additional Evidence

Appended to the second incarnation of plaintiff's summary judgment brief are eleven pages of additional medical evidence which were not presented to the ALJ. A case can be remanded for further administrative proceedings where a claimant shows that late-submitted evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). Plaintiff, however, has made no effort to articulate how the present evidence warrants sentence six remand, nor is sentence six even referenced in his brief. The issue is thus waived, and plaintiff's additional evidence has *not* been considered. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has not only failed to make a showing of good cause, but also has failed to even cite this relevant section or argue a remand is appropriate."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted).

## IV.

*Expert Testimony*

At plaintiff's 2005 administrative hearing, Dr. H.C. Alexander and clinical psychologist Marshall Tessnear provided medical expert testimony. James Williams ("Mr.

---

⁶ An assessment of "seriously limited but not precluded" is not *per se* evidence of disability. Instead, such an assessment "requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability." *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) (citation omitted).

Williams" or "VE") testified as a vocational expert.

Based on his review of the administrative record [Tr. 562-74], Dr. Alexander opined that plaintiff could occasionally lift up to twenty pounds and frequently lift up to ten pounds. [Tr. 566]. He should never use ropes, ladders, or scaffolding. [Tr. 567]. Crawling, squatting, and kneeling should be done no more than occasionally. [Tr. 567]. A sit/stand option would be required, within which plaintiff should be able to sit six hours, stand four hours, and/or walk three hours per workday. [Tr. 568].

Based on his review of the administrative record [Tr. 572-81], Dr. Tessnear predicted that concentration and social functioning would be mildly to moderately limited. [Tr. 577, 579]. Understanding and remembering complex instructions would be moderately limited. [Tr. 579].

The ALJ then presented Mr. Williams with a hypothetical claimant of plaintiff's age, education, and work history, subject to the restrictions previously indicated by testifying medical experts Alexander and Tessnear. In response, the VE identified a significant number of unskilled light jobs existing in the regional and national economies that the hypothetical claimant would be capable of performing. [Tr. 590]. In the alternative, if plaintiff's allegations were fully credited, all work would be precluded. [Tr. 590-91].

V.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

A claimant is entitled to disability insurance payments under the Social Security Act if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Claimants bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

## VI.

*Analysis*

In a less than well developed criticism, plaintiff broadly contends that the ALJ did not adequately consider the objective and subjective record in its entirety. In support of this position, plaintiff engages in a recitation of those portions of the medical record that would arguably support a vocational capacity more limited than that determined by the ALJ. Plaintiff concludes that "the ALJ did not consider all symptoms, including pain, and the extent to which these symptoms can reasonably accepted [sic] as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR [sic] § 404.1529, and Social Security Ruling 96-7p." [Doc. 8, unnumbered p. 19-20]. In response, the Commissioner argues that the ALJ did properly consider all the evidence of record and that plaintiff "provides no meaningful argument in this regard. Rather, he merely recites the record evidence that he believes supports his claim for disability." [Doc. 20, p. 11].

Social Security Ruling 96-7p and 20 C.F.R. § 404.1529 are each consistent with the Sixth Circuit's holding in *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). These authorities makes clear that a claimant's subjective complaints of pain are *alone* insufficient to support a finding of disability. These authorities further require the ALJ to determine whether the objective evidence shows a medical condition that either confirms the severity of, or would reasonably be expected to produce, the pain alleged.

13

The facts of *Duncan* are remarkably similar to the present appeal. X-ray evidence consistently showed only a "mild" spinal condition, and the physician evaluations consistently opined that the plaintiff was capable of working. *See Duncan*, 801 F.2d at 853-54. The Sixth Circuit concluded that there was substantial evidence that the claimant did not suffer from disabling pain. *Id.* at 854.

The present plaintiff is incorrect in arguing that the ALJ failed to adequately consider the entire record. In his decision, the ALJ discussed the record at length. [Tr. 22-24]. Further, he gave consideration to the testimony of the medical experts, each of whom had reviewed the record.

As plaintiff correctly points out, the ALJ "is not a medical doctor[.]" As such, the ALJ reasonably sought medical expert testimony to synthesize the diverse opinion evidence in this case pertaining to plaintiff's purportedly disabling pain. *See Richardson v. Perales*, 402 U.S. 389, 408 (1971) (While the ALJ is normally "a layman[,] the medical adviser is a board-certified specialist. He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner. He is a neutral adviser."). Some of the opinions (such as Bluefield, Reedy, Gomez/Lim, Landis, and Isernhagen) were less restrictive than the medical expert testimony. Conversely, some (such as Iosif and Ballas) were more restrictive.

The ALJ's reliance on the synthesizing medical expert opinions has in no way been shown to be unreasonable or lacking in substantial evidentiary support. A decision of

the Commissioner is not subject to reversal merely because a reasonable mind could have reached a different conclusion. *See, e.g., Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Certainly, a fact-finder could have credited plaintiff's subjective complaints and the most restrictive physician opinions. However, a fact-finder could also have reasonably discounted both based on the present record. The substantial evidence standard of review permits that "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

The court notes that no medical or vocational source - not even treating spinal physician Siddiqi [Tr. 267] - opined that plaintiff is incapable of working. The court further observes the abundance of evidence indicating that plaintiff's mental condition improves with medication. Lastly, plaintiff's activities as noted above - most notably hunting and fishing independently up to twice per week throughout at least most of the relevant time period - are cumulatively inconsistent with an inability to work, and they serve to diminish plaintiff's credibility.

Substantial evidence supports the ALJ's residual functional capacity conclusions. Substantial evidence also supports the determination that the objective evidence as a whole does not show a medical condition either confirming the severity of, or reasonably expected to produce, the disabling pain alleged.

The final decision of the Commissioner will therefore be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge